IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CARLOS PANTOJA, ID # 1085946, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:03-CV-2004-M |
| | ) | |
| DOUGLAS DRETKE, Director, | ) | |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I.  BACKGROUND

### A.  Nature of the Case

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his conviction for aggravated sexual assault in Cause No. F00-29400-PK.  Respondent is Douglas Dretke, Director of TDCJ-CID.

### B.  Procedural and Factual History

On January 7, 2000, the State indicted petitioner for allegedly sexually assaulting his granddaughter.  TR[1] at 2 (indictment); Reporter's Record, Vol. III at 14-15 [hereinafter cited as RR-volume # at page].

---

[1]  "TR" refers to the state trial record in Cause No. F00-29400-PK.

At trial, five witnesses testified for the State.  The complainant (VR) testified that petitioner sexually assaulted her by placing his penis in her mouth.  *Id.* at 17.  She testified that such assaults began when she was five years old.  *Id.* at 16, 19.  The complainant's mother (CR)[2] testified as to what VR had told her about the alleged assaults.  *Id.* at 89-130.  A police detective testified about the investigation regarding petitioner.  *Id.* at 135-42.  A pediatrician testified about a medical examination performed on VR a few days after the last alleged assault and why it is common for no medical evidence to be found in certain types of sexual abuse.  *Id.* at 156-66.  VR's therapist testified as to what VR had told her about the alleged assaults and how the experiences with her grandfather affected her.  *Id.* at 170-96.

Lena Levario represented petitioner at trial.  *See* RR-I at 2.  Petitioner called a son, daughter, and step-daughter to testify on his behalf.  *See id.* at 207-38; RR-IV at 6-32, 108-36.  His wife also testified on his behalf.  RR-IV at 33-105.  The son, daughter, and wife all testified that petitioner had no opportunity to sexually assault the complainant because he was never alone with her and he worked long hours.  RR-III at 214-18, 223, 226-27; RR-IV 19-21, 24, 37, 43-47.  The son further testified that both VR and CR were known to lie.  RR-IV at 22.  The daughter also testified that CR was not a truthful person.  RR-III at 224.  The step-daughter provided testimony regarding CR's reputation for truthfulness.  She testified that, although CR had alleged that petitioner raped her when she was eleven or twelve years old, such allegation was fabricated by CR.  RR-IV at 111-12, 114, 124-25.  The step-daughter also testified that, although she had told CR that petitioner had also raped her, such allegation was likewise false.  *Id.* at 120-21.  Furthermore, although petitioner's wife

---

[2] CR is also the petitioner's daughter and sister to several other witnesses.  To avoid confusion, the Court will generally simply refer to her as CR.

2

conceded that CR had also alleged that she had been raped by petitioner and recognized a potential allegation that petitioner had abused another granddaughter (ER) besides complainant, the wife characterized such allegations as untrue. *See id.* at 59-60, 88-89, 94.

Petitioner testified that he did not sexually assault his daughter (CR) or either of his granddaughters (VR and ER). *Id.* at 137-38. He testified that his wife was responsible for watching the children while they visited. *Id.* at 143-44. He insisted that he never spent time alone with either of his granddaughters. *Id.* at 143-63.

CR and ER testified for the State on rebuttal. ER testified that she stopped going to her grandparent's house because petitioner repeatedly forced her to perform oral sex on him. *Id.* at 176. CR testified that petitioner began molesting her (CR) when she was six and did not stop until she reported him to the police when she was twelve. *Id.* at 198-99. She testified that she allowed her daughters to visit her parents only because she thought that petitioner had changed and because she had the understanding that he would never be left alone with her daughters. *Id.* at 196.

Before the trial court permitted any testimony regarding extraneous offenses, it conducted a hearing outside the presence of the jury. *See* RR-IV at 67-82. After hearing argument from the parties, it ruled the extraneous offenses admissible. *Id.* at 76. It specifically found the probative value of the evidence outweighed the prejudicial effect. *Id.* In addition, the trial court gave a limiting instruction to the jury just prior to the State eliciting testimony regarding extraneous offenses. *See id.* at 85. It instructed:

> Ladies and gentlemen of the jury, you're instructed that if there's any evidence in this case regarding the defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any.

> And even then you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity or absent [sic] of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged in the indictment and for no other purpose.

*Id.*

On May 4, 2000, a jury convicted petitioner of aggravated sexual assault.  (Pet. for Writ of Habeas Corpus (Pet.) ¶¶ 2-6); RR-V at 43.  The jury assessed punishment at ten years imprisonment and the court sentenced him consistent with that assessment.  RR-V at 63-64.  J. Stephen Cooper filed an appeal on petitioner's behalf.  *See* S.H. Tr.[3] at 52.  On June 19, 2001, the Fifth District Court of Appeals of Texas at Dallas affirmed the conviction.  *Pantoja v. State*, No. 05-00-00756-CR, 2001 WL 683557, at *4 (Tex. App. – Dallas June 19, 2001, pet. ref'd).  On November 28, 2001, the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review.  (Pet. ¶ 9.)  On June 19, 2002, petitioner filed a state application for writ of habeas corpus.  S.H. Tr. at 3.  On March 24, 2003, the trial court entered Findings of Fact and Conclusions of Law with respect to that state writ.  *Id.* at 38-47.  On May 21, 2003, the Texas Court of Criminal Appeals denied petitioner's application without written order on the findings of the trial court without a hearing.  *Ex parte Pantoja*, No. 55,697-01, slip op. at 1 (Tex. Crim. App. May 21, 2003).

On August 29, 2003, petitioner filed the instant petition for federal habeas relief.  (*See* Pet. at 9); *see also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).  Respondent thereafter filed an answer and provided the state-court records.  (Resp.'s Answer.)  Petitioner subsequently filed a

---

[3] "S.H. Tr." denotes the state habeas records attached to *Ex parte Pantoja*, No. 55,697-01, slip op. (Tex. Crim. App. May 21, 2003).

reply brief.  (Petitioner's Reply to State's Answer, hereinafter referred to as Reply.)  On November 5, 2004, the Court received a supplement to the reply brief.[4]  (*See* Supplement to Record.)  In October and November 2004, petitioner filed three motions for court order, a motion for release of sealed envelope, and a motion for appointment of counsel.[5]

## C.  Substantive Issues

Petitioner raises the following claims in this action:  (1) ineffective assistance of appellate counsel; (2) insufficiency of the evidence; (3) trial court error; (4) prosecutorial misconduct; and (5) ineffective assistance of trial counsel.  (*See* Pet. at 7-8 and Attached Pages.)[6]

## D.  Procedural Issues

Respondent contends that petitioner has not sufficiently exhausted his state remedies with respect to his Claims 2, 3, and part of Claim 5.  (Answer at 4-5.)  He does not seek dismissal for the failure to exhaust, but rather on the related ground of procedural bar.  (*Id.* at 5, 9-13.)  Petitioner,

---

[4]  The supplement contains a series of affidavits from petitioner, his wife, and prisoners who were incarcerated with petitioner in the Dallas County Jail.  (*See* Affs. contained within Supplement.)  Each affidavit concerns a "rancid smell" emanating from petitioner due to "jock itch" during and just after the time-period related to the allegations against him. (*Id.*)  As graphically detailed in his wife's affidavit, petitioner smelled "like a dead dog" and the smell was so bad that no one could perform "oral sex without vomiting."  (*See* Aff. of Maria Pantoja.)  From her affidavit it is apparent that petitioner submits the supplemental material to show that he could not have committed the crime for which he was convicted.  Because petitioner presented no trial evidence of his bad smell, the Court finds the supplemental material irrelevant to resolution of the pending federal writ of habeas corpus and will not further consider it.

[5]  The Court denies these motions in an order issued contemporaneously with these findings.

[6]  In the Order of December 22, 2003, the Court referred to a memorandum attached to the petition filed in this action. (*See* Order at 3.)  In his reply brief, petitioner asserts that he filed no memorandum and requests a copy of the memorandum.  (*See* Reply at 5.)  Despite the assertion, the petition filed in this action has several attached pages titled "Additional Facts and Grounds" related to petitioner's five claims and, for each of his five claims, he attaches a one- or two-page "Memorandum of Law."  To avoid confusion, the Court will refer generally to the various attachments as "Attached Pages".  Furthermore, because petitioner submitted the attached pages, including the memorandum, the Court denies his request for a copy of the memorandum.

on the other hand, contends that these claims should not be procedurally barred.  (*See* Reply at 3, 13-15.)

The Court need not definitively decide whether the alleged unexhausted claims should be procedurally barred.  Although a petitioner must generally exhaust state remedies before seeking federal habeas relief, the Court may, nevertheless, deny a habeas petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).  The Fifth Circuit has reaffirmed pre-AEDPA law that "when, as in this case, exhaustion is not waived, courts have the 'discretion in each case [under § 2254(b)(2)] to decide whether the administration of justice would be better served by insisting on exhausting or by reaching the merits of the petition forthwith.'"  *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (quoting *Granberry v. Greer*, 481 U.S. 129, 131 (1987)).  Furthermore, the Fifth Circuit has recognized that federal courts may not **grant** habeas corpus relief on claims which were "denied review by the state courts because of a procedural default, absent a showing both of cause for the default and resulting prejudice."  *McKinney v. Estelle*, 657 F.2d 740, 743 (5th Cir. 1981).  *McKinney* thus implies that the district courts may deny habeas relief for procedurally defaulted claims.  Although *Jones* specifically addresses exhaustion, the Court finds its rationale equally applicable to the related concept of procedural bar, especially in light of the implication found in *McKinney*.  In this instance, it appears most efficient to deny the claims on the merits rather than become embroiled in the dispute about procedural bar.  In addition, the administration of justice is better served by expeditiously resolving the merits of petitioner's claims instead of expending scarce judicial resources deciding the contested assertions of procedural bar.  Because it appears that petitioner is entitled to no habeas relief on the alleged unexhausted claims, the Court bypasses the procedural bar dispute in the interests of judicial efficiency and proceeds to the merits of claims.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural."  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

In this case, the denial of petitioner's state writ constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits).  The Court notes, however, that the state court did not adjudicate petitioner's insufficiency claim on the merits except in the context of ineffective assistance of appellate counsel based upon a failure of counsel to raise the claim on appeal.  *See* S.H. Tr. at 39-46.  In the narrower, specific context of insufficiency of the evidence, it found that such claim is "not cognizable in a habeas corpus application."  *Id.* at 45.  The Texas Court of Criminal Appeals denied petitioner's state writ without written order on the findings of the trial court.  *Ex parte Pantoja*, No. 55,697-01, slip op. at 1 (Tex. Crim. App. May 21, 2003).  Such denial generally constitutes a procedural ruling on the insufficiency claim.  *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004).  Nevertheless, because the habeas court decided that the suffi-

7

ciency claim had no merit when it determined that appellate counsel did not render ineffective assistance by failing to raise the claim on direct appeal, the Court finds that the state courts have adjudicated the sufficiency claim on the merits through the broader claim of ineffective assistance of appellate counsel. Thus, for the claims raised in petitioner's state writ, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.[7]

The AEDPA standards also apply to the claims that petitioner raised on direct appeal. The court of appeals specifically considered the merits of such claims when it affirmed petitioner's conviction. *Pantoja v. State*, No. 05-00-00756-CR, 2001 WL 683557, at *1-4 (Tex. App. – Dallas June 19, 2001, pet. ref'd). Although the court of appeals initially found that petitioner waived any objection to evidence that his step-sister had alleged that he sexually abused her, it later concluded that the evidence was properly admitted in any event. *Id.* at *3 & n.2. While the appellate court invoked an adequate state procedural bar[8] to the claim, it alternatively addressed the merits of the claim. Such merits determination is sufficient to apply the AEDPA standards of § 2254(d) to such claim when this Court has not dispensed with the federal claim based upon procedural bar.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

---

[7] If the Court were to find no adjudication of the sufficiency-of-the-evidence claim on the merits, the standards under § 2254(d) would not apply to such claim. "Review is *de novo* when there has been no clear adjudication on the merits." *Miller v. Johnson*, 200 F.3d 274, 281 n.4 (5th Cir. 2000). In this case, whether the Court applies the AEDPA standards or reviews the sufficiency claim *de novo* makes no difference to the ultimate outcome of such claim.

[8] Texas state courts strictly and regularly follow the contemporaneous objection rule. *Dowthitt v. Johnson*, 230 F.3d 733, 752 (5th Cir. 2000). Such procedural rule is thus an adequate procedural bar to federal review. *Id.*

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

With these AEDPA standards in mind, the Court proceeds to address the merits of petitioner's various claims. Because the resolution of some claims are somewhat dependent upon other claims, the Court will address petitioner's claims in a different order than presented to it.

## III. TRIAL COURT ERROR

In Claim 3, petitioner alleges that errors of the trial court deprived him of his due process right to a fair trial. (Pet. at 7; Attached Pages at 12.) He asserts that the trial court erred when it permitted evidence of sexual offenses or "bad acts" he allegedly committed against family members other than VR. (Pet. at 7; Attached Pages at 11-12.) He further asserts that the court erred when it denied his request to have his trial attorney removed from the case. (Attached Pages at 12.) He also asserts that the trial court maliciously withheld records of Child Protective Services (CPS) from

him and erred in denying him the opportunity to impeach CR with the CPS records.[9]  (Attached Pages at 11; Reply at 9.)

Evidentiary rulings and rulings made during a state trial regarding removal or withdrawal of counsel are matters of state law that are not subject to re-examination by the federal courts.[10]  It is not "the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  A petitioner is thus entitled to federal habeas relief due to trial error only if such error is not harmless, *i.e.* "the error 'had substantial and injurious effect or influence in determining the . . . verdict.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (citation omitted).

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict.  It must have had a substantial effect or influence in determining the verdict.  We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)).  To be entitled to federal habeas relief due to a trial error, petitioner must show the error actually prejudiced him.  *Brecht*, 507 U.S. at 637.

## A.  Alleged Evidentiary Error During Trial

Petitioner alleges that the trial court erroneously admitted evidence of irrelevant "bad acts" which substantially biased the jury against him.  (Pet. at 7; Attached Pages at 12.)  He contends that

---

[9] Petitioner also asserts without elaboration that the trial court erred in allowing punishment without proof.  (Attached Pages at 12.)  Such alleged error appears to challenge the sufficiency of the evidence.  The Court addresses that claim in the next section.

[10] Under Texas law, the trial court may choose from three options when faced with a request for different counsel. *Burgess v. State,* 816 S.W.2d 424, 428-29 (Tex. Crim. App. 1991).  Unless the criminal defendant makes a request for self-representation, each option is purely a matter of state-law.  *Id.*  Nothing in this case suggests that petitioner requested to represent himself.  Consequently, the issue of removal or withdrawal of counsel in this case is purely a matter of state law.

the admission of evidence that he had sexually abused his daughter, a step-daughter, and a grand-daughter (ER) other than the complainant clearly prejudiced him.  (Attached Pages at 12.)

"A federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law" unless it is asserted that the state law itself violates the Constitution.  *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  "State appellate courts are free to police their own evidentiary rules."  *Id.* at 1224.  In habeas actions, furthermore, federal courts "do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding."  *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999).  If an erroneous trial court ruling does not violate a specific federal constitutional right, a federal court may only grant habeas relief on such error when the error "renders the petitioner's trial fundamentally unfair."  *Gochicoa v. Johnson*, 118 F.3d 440, 446 (5th Cir. 1997).  A fundamentally unfair trial violates the Fourteenth Amendment right to due process.  *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994).  A trial is deemed "unfair" when it has been "largely robbed of dignity due a rational process."  *Johnson v. Blackburn*, 778 F.2d 1044, 1050 (5th Cir. 1985) (citation omitted).

In this instance, petitioner has not asserted that any state law violates the Constitution.  Instead, he asserts that evidentiary rulings prejudiced him.  However, he unsuccessfully challenged the admission of the extraneous offenses on direct appeal.  *See Pantoja v. State*, No. 05-00-00756-CR, 2001 WL 683557, at *2-3 (Tex. App. – Dallas June 19, 2001, pet. ref'd).  The appellate court noted his defensive theory "that he had no opportunity to sexually assault the complainant" and concluded that

> evidence that [petitioner] sexually assaulted the complainant's sister was admissible to rebut [the] theory that he did not have the opportunity to commit the offense. Further, evidence of the assaults on the complainant's sister, as well as evidence that [he] sexually assaulted his own daughter . . . was admissible to show that it was possible for [him] to be sexually assaulting children in the home he shared with [his wife] without her knowing about it.

11

*Id.* at *3.  The court also found evidence related to petitioner's sexual assaults against his step-daughter admissible for the same reasons.  *Id.* at *3 n.2.

In view of the state ruling of admissibility, this Court will defer to the state-court determination of Texas law.  Finding the evidence properly admitted under Texas law, the Court is unable to find any trial court error related to the admission of any extraneous offense.  Under state law, the trial court properly admitted the evidence of extraneous offenses to rebut a defensive theory. Because the trial court did not err in admitting the extraneous offenses, this claim entitles petitioner to no habeas relief.  In the absence of error by the trial court, an evidentiary ruling cannot deny a criminal defendant a constitutionally fair proceeding.

## B.  Withholding CPS Records

Petitioner further contends that the trial court wrongly withheld CPS records from him. (Attached Pages at 11.)  He asserts that "[i]t was very important to [his] rights and benefit to see [those] records."  (*Id.*)  He claims that the ruling of the trial court deprived him of the opportunity to use the records to impeach his daughter.  (Reply at 9.)

During the testimony of petitioner's step-daughter, the subject of CPS records arose.  *See* RR-IV at 118.  The trial court indicated that it "reviewed the records and sealed them and made them part of the record."  *Id.*  In resolving petitioner's direct appeal, the appellate court addressed petitioner's contention that "the trial court erred in refusing to permit him to impeach the complainant's mother with records from Child Protective Services."  *See Pantoja v. State*, No. 05-00-00756-CR, 2001 WL 683557, at *3 (Tex. App. – Dallas June 19, 2001, pet. ref'd).  After noting that petitioner provided no authority for such point of error, it stated:

> We have nevertheless reviewed appellant's point and conclude it is meritless.  CPS records are generally confidential and privileged from disclosure. *See* Tex. Fam. Code Ann. § 261.201 (Vernon Supp. 2001).  We have reviewed the CPS records sealed by the trial court.  The records contain no evidence that could be considered exculpatory.  The trial court did not abuse its discretion in refusing to turn them over to appellant.  We overrule appellant's second point of error.

*Id.* at *4.

12

In view of the state ruling regarding the confidentiality of CPS records under state law, this Court will defer to the state-court determination of Texas law. Finding the evidence properly withheld from petitioner, the Court is unable to find any trial court error related to the exclusion of such evidence. Under state law, the trial court properly maintained the confidentiality of the CPS records. Moreover, even if the trial court erred in withholding such records, petitioner has demonstrated no prejudice from his lack of access to the documents. The appellate court reviewed the documents and found nothing exculpatory within them. Furthermore, even if the records contained matters that could sufficiently impeach the testimony of CR, the withholding of the documents did not render petitioner's trial fundamentally unfair. The testimony of CR regarding her abuse was not crucial to the conviction. The withholding of the CPS records from petitioner had no substantial or injurious effect or influence on the verdict. This claim entitles petitioner to no habeas relief.

## C.  Denying Requests to Remove Attorney

Petitioner also contends that the trial court erred in its handling of his requests to remove his trial attorney from the case. (*See* Attached Pages at 12.) In a nearly indecipherable manner, he states:

> Court erred by being malice and not furnishing appellant's request twice by way of letters to court before trial, due to the fact that court counsel was not communicating with appellant to question or advise appellant on the allegations. After trial appellant had a future trial. Appellant ask court by motions for counsel withdrawal and the court twice denied appellant. Appellant had to request assistance from a higher court for new counsel.

(*Id.*) He further contends: "Court erred in stating in a high harsh threatening voice 'you will freeze in hell before you get another attorney.' Then appellant met new counsel about 3 weeks later." (*Id.* (obvious spelling errors corrected).) He argues that an actual or constructive denial of counsel is legally presumed to result in prejudice. (*Id.*) In his reply brief, he states that the trial court erred "in not granting his request to have his Attorney to withdraw as Trial Counsel thru Ander's [sic] brief."[11] (Reply at 10.) In an affidavit related to his attorney's performance, petitioner indicated that

---

[11] The reference to *Anders* appears to be a reference to *Anders v. California*, 386 U.S. 738 (1967).

he twice wrote the trial court to obtain new counsel prior to his trial and received no response to his letters. (Aff. of Facts at 2, attached to Reply.) In that same affidavit, he asserts that he filed two motions for removal of counsel which the trial court denied. (*Id.* at 6.) He further indicated in that affidavit that he wrote a higher court and got a new attorney. (*Id.*)

Although the factual basis of this claim is unclear, an affidavit from trial counsel sheds some light on it. Trial counsel averred:

> I represented Mr. Pantoja in two separate child abuse cases, but only one was tried before a jury. I remained Mr. Pantoja's attorney in the other case after his jury trial for a period of months. Subsequent to his jury trial, we appeared before [the trial judge] several times on Mr. Pantoja's motions to have me removed from his attorney.

S.H. Tr. at 56. The trial court found the trial attorney "trustworthy" and the statements in her affidavit "worthy of belief." *Id.* at 39, 42. Such credibility finding is presumed correct unless petitioner rebuts it with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Petitioner has not shown clear and convincing evidence that overcomes the presumption of correctness. This Court thus defers to that credibility finding.[12] From this affidavit it appears that the claimed trial error related to removal of counsel occurred after completion of the trial in this case. To the extent this claim relates to the removal of trial counsel after trial, the claimed error entitles petitioner to no habeas relief from his conviction for aggravated sexual assault in this case.

Furthermore, even if the alleged trial court error relates to representation on the conviction challenged in this case, petitioner has not shown that he was actually or constructively[13] denied counsel at any point during the proceedings related to that conviction. Nor has he shown any prejudice from the denials of the trial court to remove counsel. Unless the actions of the trial court preju-

---

[12] The Court will defer to this credibility finding several times in these findings. The Court will not address the presumption of correctness in each instance.

[13] In *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court recognized that a defendant might be constructively denied counsel although an attorney had been appointed to represent him. 466 U.S. at 654 n.11 ("[T]he performance of counsel may be so inadequate" as to constitute no assistance of counsel at all). A defendant is constructively denied counsel when his attorney "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.* at 659. A review of the record in this case reveals no constructive denial of counsel. At all points in the proceedings, petitioner was represented by his trial attorney, Ms. Levario, or his appellate attorney, Mr. Cooper.

diced petitioner, he is entitled to no habeas relief.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

## IV.  SUFFICIENCY OF THE EVIDENCE

In his second claim, petitioner contends that the evidence presented against him at trial is legally insufficient to support his conviction.  (Pet. at 7; Attached Pages at 11.)

"A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense." *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992).  Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia*, 443 U.S. 307 (1979).  When reviewing such claims against the underlying conviction, the relevant question "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  When "faced with a record of historical facts that supports conflicting inferences [courts] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

Further, under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995).  "Determining the weight and credibility of the evidence is within the sole province of the jury." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992).  Courts view "any required credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000).  They do not "second-guess[] the weight or credibility given the evidence." *United States v. Ramos-Garcia*, 184 F.3d 463, 465 (5th Cir. 1999).  The *Jackson* standard applies whether the evidence is direct or circumstantial. *United States v. Scott*, 159 F.3d 916, 920 (5th Cir. 1998).

Federal courts apply the "standard looking to the state's substantive law, giving great weight to the state court's determination." *Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir. 2000).  State case

law and statutes bind the courts in their determination of the elements needed to be proven. *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992). In reviewing a challenge to the sufficiency of the evidence supporting the underlying conviction, "*Jackson* requires . . . that the review occur 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Bledsue v. Johnson*, 188 F.3d 250, 259 (5th Cir. 1999) (quoting *Jackson*, 443 U.S. 324 n.16). The federal courts must "independently analyze the governing statute, the indictment, and the jury charge to measure the constitutional sufficiency of the evidence and determine what are the *essential elements* required by the *Jackson* sufficiency inquiry." *Id.* at 260. Such independent analysis is required so as to avoid reliance upon an incorrect jury charge or indictment. *Id.* When considering a claim of insufficient evidence to support the underlying conviction on federal habeas review, this Court should only determine "whether the evidence was constitutionally sufficient to convict [petitioner] of the crime charged." *Id.* at 262 (quoting *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991)).

In this case, the State charged petitioner with aggravated sexual assault of a child under the age of fourteen. TR at 2. The indictment specifically charged that, on or about January 1, 1999,[14] in Dallas County, Texas, petitioner did

> unlawfully then and there intentionally and knowingly cause the contact and penetration of the mouth of [the complainant], a child, who was not then the spouse of the defendant, by the sexual organ of said defendant, and at the time of the offense, the child was younger than 14 years of age.

*Id.* The trial court submitted a charge to the jury consistent with the indictment. *See id.* at 12-13.

Under Texas law, furthermore, a person commits an aggravated sexual assault of a child, if he intentionally or knowingly "causes the penetration of the mouth of a child by the sexual organ of the actor" or "causes the mouth of a child to contact the . . . sexual organ of another person, including the actor" TEX. PEN. CODE. ANN. § 22.021(a)(1)(B)(ii) and (v) (Vernon 1999). The

---

[14] Under Texas law, "'on or about' means before the presentment of the indictment and within the statute of limitations period." *Ex parte Goodman*, 152 S.W.3d 67, 71 (Tex. Crim. App. 2004), *cert. denied* ___ U.S. ___, 125 S. Ct. 2940 (2005). "The statute of limitations for aggravated sexual assault of a child is ten years from the eighteenth birthday of the victim." *Hendrix v. State*, 150 S.W.3d 839, 853 (Tex. App. – Houston [1 Dist.] 2004, pet. ref'd).

testimony of the child victim alone is sufficient evidence to support a conviction for aggravated sexual assault. *Mallet v. State*, 9 S.W.3d 856, 864 (Tex. App. – Fort Worth 2000, no pet. h.); *Empty v. State*, 972 S.W.2d 194, 196 (Tex. App. – Dallas 1998, pet. ref'd).

In this instance, the complainant provided sufficient testimony to support the conviction. She testified that petitioner placed his penis in her mouth on numerous occasions commencing when she was five. RR-III at 16-19. Under *Jackson*, the complainant's testimony alone is sufficient to support petitioner's conviction for sexual assault. Such testimony established that petitioner intentionally caused the complainant's mouth to contact his sexual organ. Furthermore, such testimony was consistent with what the complainant had told her mother and her therapist.

Although petitioner denied the allegations and presented a defensive theory that he lacked the opportunity to assault the complainant and that the allegations against him were fabricated, the jury made its credibility determination and found the State's witnesses more credible than the witnesses for the defense. Viewed in a light most favorable to the prosecution, the Court finds that the record supports the jury verdict. From the evidence, a rationale jury could conclude that petitioner intentionally or knowingly caused the complainant's mouth to contact his sexual organ. A rational trier of fact could have found the essential elements of aggravated sexual assault offense beyond a reasonable doubt.

Under the above *de novo* review of the sufficiency claim, the Court finds that the evidence was constitutionally sufficient to convict petitioner for aggravated sexual assault. Furthermore, the state finding that sufficient evidence supports petitioner's conviction (made in the context of ineffective assistance of appellate counsel) appears consistent with *Jackson*, the clearly established Federal law applicable to sufficiency claims. The decision, furthermore, appears to be a reasonable application of such law. *See* 28 U.S.C. § 2254(d)(1). The decision appears to be based upon a reasonable determination of the facts in light of the evidence presented. *See id.* § 2254(d)(2). For all of these reasons, the claim of insufficient evidence entitles petitioner to no habeas relief.

## V.  PROSECUTORIAL MISCONDUCT

In his fourth claim, petitioner claims that the prosecutor engaged in misconduct by knowingly using false accusations, misstating the evidence, and improperly bolstering State witnesses while impermissibly attacking his character and interjecting his opinion as evidence.  (Pet at 8; Attached Pages at 13.)  This claim concerns allegations of sexual abuse made by his daughter approximately ten years before the allegations of his granddaughter which led to the instant conviction.  (Attached Pages at 13.)  It also concerns alleged sexual abuse of his step-daughter.  (*Id.*)  Petitioner also claims that the prosecutor engaged in "malicious mischief" when she tried to entrap him to lie to a "trick question" that asked whether he bought gifts and other things for his grandchildren and when he answered affirmatively the prosecutor asked "what for to have sex with them."  (*Id.*)  Petitioner further claims that the cumulative effect of the prosecutorial misconduct deprived him of a fair trial. (*See* Mem. of Law related to Claim 4 attached to Pet.)

"Prosecutorial misconduct implicates due process concerns."  *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992).  Actions and statements of a prosecutor may violate due process in two ways. "They may abridge a specific right conferred by the Bill of Rights, or may constitute a denial of due process generally, thus constituting a 'generic substantive due process' violation."  *Id.* (quoting *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988)).  The Court should "first determine the type or types of misconduct alleged, because '[t]he case law supplies a different test for each kind of due process violation.'"  *Id.* (quoting *Rogers*, 848 F.2d at 608).

In this case, petitioner alleges a general violation of due process.  When considering such a general violation, the courts ask whether the prosecutorial actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  In the habeas context, the appropriate standard of review for such allegations is "the narrow one of due process, and not the broad exercise of supervisory power."  *Id.* (quoting *DeChristoforo*, 416 U.S. at 642).  "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the

trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks omitted).[15]

## A.  Alleged Misconduct Related to Extraneous Offenses

Petitioner claims various misconduct related to the extraneous offenses that the prosecutor introduced at trial.  (Pet. at 8; Attached Pages at 13.)  The State habeas court considered the same claims of prosecutorial misconduct and found no prosecutorial actions that rose to the level of misconduct.  *See* S.H. Tr. at  9, 46.  The Texas Court of Criminal Appeals adopted such finding when it denied petitioner's state application on the findings of the trial court.  *See Ex parte Pantoja*, No. 55,697-01, slip op. at 1 (Tex. Crim. App. May 21, 2003).

This Court also finds no misconduct.  Petitioner has not shown that any evidence proffered by the State was false.  Furthermore, even if proffered evidence of sexual abuse was false, petitioner has not shown that the prosecutor proffered such evidence with knowledge that it was false.  Petitioner has shown no misstatement of the evidence or improperly bolstering of State witnesses.  Moreover, he has shown no such misconduct that made his trial fundamentally unfair.  He has shown no reasonable probability that the outcome of his trial would have differed in the absence of the alleged misconduct.

The crux of this claim lies with the prosecutor's use of evidence related to alleged sexual abuse by petitioner of his daughter and step-daughter.  Petitioner claims that the prosecutor engaged in misconduct by using these unproven extraneous offenses.  On direct appeal, however, the court of appeals found all the admitted extraneous offenses admissible under Texas law.  *See Pantoja v.*

---

[15] This is the only test necessary to apply for generic violations of due process.  If the alleged misconduct rises to the level of constitutional error, the Court need not apply a harmless error test.  *Darden*, 477 U.S. at 183 n.15.  The Fifth Circuit Court of Appeals has observed, furthermore, that application of a harmless error test would be "superfluous" after a determination that the trial was rendered fundamentally unfair.  *Kirkpatrick v. Blackburn*, 777 F.2d 272, 280 (5th Cir. 1985).

*State*, No. 05-00-00756-CR, 2001 WL 683557, at *2-3 & n.2 (Tex. App. – Dallas June 19, 2001, pet. ref'd).   Furthermore, when considering petitioner's state application for writ of habeas corpus, the trial court found evidence of extraneous offenses admissible.  S.H. Tr. at 40-42.  The Texas Court of Criminal Appeals adopted such finding when it denied that state application.  In a habeas proceeding, this Court does not sit in review of a state court's interpretation of its own law.  *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).  In view of the state ruling of admissibility, this Court will defer to the state-court determination of Texas law.  Finding the evidence properly admitted under Texas law, the Court is unable to find any misconduct by the prosecutor in using any extraneous offense.

    For all of these reasons, this claim of prosecutorial misconduct entitles petitioner to no habeas relief.

## B.  Alleged Misconduct Related to Entrapment

    Petitioner also claims that the prosecutor tried to entrap him to lie when she asked whether he bought gifts and other things for his grandchildren and after he answered "yes" the prosecutor asked whether the gifts were for having "sex with them."  (Attached Pages at 13.)  The Court finds no misconduct from the alleged improper questioning.  The complainant specifically testified that petitioner would buy her gifts after forcing her to perform oral sex.  *See, e.g.*, RR-III at 21.  Such testimony provides a legitimate basis for the questioning.  Furthermore, to the extent the questioning overstepped permissible bounds, such questioning did not render petitioner's trial fundamentally unfair.  This claim entitles petitioner to no habeas relief.

## C.  Cumulative Error

    Petitioner claims that the cumulative effect of the prosecutorial misconduct deprived him of a fair trial.  (*See* Mem. of Law related to Claim 4 attached to Pet.)

    "The Sixth Amendment guarantees a fair trial and an impartial jury."  *Morgan v. Illinois*, 504 U.S. 719, 726-27 (1992).  It is well settled that "'[a] fair trial in a fair tribunal is a basic requirement of due process.'"  *Id.* at 727 (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).  The Fifth Circuit,

furthermore, has recognized the concept of cumulative error.  *See Derden v. McNeel*, 978 F.2d 1453, 1456 (5th Cir. 1992).  Nevertheless, it held that

> federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors "so infected the entire trial that the resulting conviction violates due process."

*Id.* at 1454 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

In this instance, although petitioner makes several allegations of prosecutorial misconduct, the Court has found no merit to any of them individually.  Furthermore, to the extent there was any prosecutorial misconduct of constitutional dimension, such misconduct did not so infect the trial that petitioner's conviction violates due process.  Consequently, petitioner is entitled to no habeas relief on his claim of cumulative error.

## VI.  INEFFECTIVE ASSISTANCE OF COUNSEL

In his fifth claim, petitioner alleges that his trial counsel rendered ineffective assistance of counsel.  (*See* Pet. at 8; Attached Pages at 14.)  In his first claim, petitioner alleges that he received ineffective assistance from his appellate counsel when counsel failed to raise issues on appeal.  (*See* Pet. at 7; Attached Pages at 10.)

The Sixth Amendment to the United States Constitution provides criminal defendants a right to effective assistance of counsel during trial.  U.S. CONST., art. VI.  Criminal defendants, furthermore, have a constitutional right to effective assistance of counsel in their first appeal.  *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Douglas v. California*, 372 U.S. 353, 356-57 (1963).  To successfully state a claim of ineffective assistance of counsel under Supreme Court precedent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.[16]  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A failure to

---

[16]  Petitioner asserts that his attorney was actively representing conflicting interests.  (*See* Attached Pages at 14.)  When a prisoner shows an actual conflict that adversely affected his attorney's performance and thus denied him his Sixth Amendment right to effective assistance of "conflict-free counsel," *Cuyler v. Sullivan*, 446 U.S. 335 (1980) provides the applicable standard for evaluating claims of ineffective assistance of counsel.  *See Perillo v. Johnson*, 205 F.3d 775, 781 (5th

establish either prong of this test requires a finding that counsel's performance was constitutionally effective.  *Id.* at 696.  "A claim of ineffective assistance based on the failure to argue an issue on appeal is governed by the familiar two-part *Strickland* test."  *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000).  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance."  *Strickland*, 466 U.S. at 689.  Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."  *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted).  To show prejudice, when an attorney has "failed to adequately brief an issue on direct appeal, [petitioner] must show initially that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately address-

---

Cir. 2000).  A defendant may show ineffective assistance of counsel under *Cuyler* without showing prejudice.  *Id.* at 781-82.  "A conflict [of interest] exists when defense counsel places himself in a position conducive to divided loyalties."  *United States v. Medina*, 161 F.3d 867, 870 n.1 (1998) (quoting *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985)) (alteration in original) (internal quotation marks omitted).  There is no actual conflict of interest, however, unless "defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client."  *Perillo*, 205 F.3d at 781.  The Fifth Circuit Court of Appeals has held that the *Cuyler* standard applies only to claims of ineffective assistance of counsel resulting from conflicts of interest caused by multiple representation.  *See Beets v. Scott*, 65 F.3d 1258, 1270-72 (5th Cir. 1995) (en banc).  The standard enunciated in *Strickland* applies when a prisoner alleges a conflict of interest of a different ilk.  *See id.* at 1272.

In this instance, petitioner identifies no conflict of interest.  Moreover, because petitioner was the sole defendant in the underlying criminal action, his defense attorney was not working under a conflict of interest caused by multiple representation.  The Court thus finds that the *Strickland* standard applies to petitioner's claims of ineffective assistance of counsel.

ed the issue." *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). Petitioner "must then demonstrate that the attorney's deficient performance led to a fundamentally unfair and unreliable result." *Id.* Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.

Petitioners must "affirmatively prove prejudice." *Id.* at 693. To establish prejudice, they must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations, furthermore, are insufficient to obtain habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

## A.  Ineffective Assistance of Trial Counsel

Petitioner claims that his trial attorney rendered ineffective assistance when she failed to (1) adequately investigate, prepare, or communicate with him before trial; (2) properly object to the "bad acts" evidence; (3) object to the entrapment question; (4) send him for a psychological profile; (5) call two witnesses to testify; and (6) advise him of his right to remain silent. (*See* Pet. at 8; Attached Pages at 14.)

### 1.  Failure to Adequately Investigate, Prepare, and Communicate

Petitioner contends that his trial attorney failed to adequately investigate, prepare, and communicate with him prior to trial. He asserts that he received no letters or visits from counsel during the five months before trial. (Attached Pages at 14.) He further asserts that he only met counsel when counsel was first appointed and on the morning of trial. (*Id.*) He also asserts that his attorney failed to investigate friends, neighbors, and relatives who would have testified that he was a non-violent, hard-working man who was devoted to his family. (*Id.*)

23

In response to petitioner's state application for writ of habeas corpus, trial counsel submitted an affidavit in which she averred that she adequately investigated and prepared for trial. S.H. Tr. at 49. She further averred that she had several conferences with petitioner and all potential witnesses. *Id.* As mentioned previously, the trial court found the attorney "trustworthy" and the statements in her affidavit "worthy of belief." *Id.* at 39, 42. Based upon the affidavit of counsel, it appears that counsel engaged in more investigation and preparation than petitioner recognizes.

Nevertheless, because petitioner has shown no prejudice from the lack of more thorough investigation, preparation, and communication, the Court has no reason to determine whether the level of investigation, preparation, and communication constitutes deficient performance. Even assuming deficient performance related to the level of investigation, preparation, and communication of counsel in this case, petitioner is entitled to no habeas relief on the alleged failures under *Strickland*. Petitioner fails to show how more frequent visits or more thorough investigation or preparation would have affected the outcome of his trial. To succeed on a claim of ineffective assistance of counsel, petitioner must affirmatively show prejudice. He has not shown a reasonable probability that had counsel engaged in more thorough investigation or preparation or communicated with him more frequently the outcome of his trial would have differed. He presents nothing to undermine confidence in the verdict or sentence. Accordingly, petitioner is not entitled to habeas relief on this claim.

### 2. Failure to Properly Object to "Bad Acts" Evidence

Petitioner also contends that his attorney failed to properly object to the extraneous offenses presented at trial. (Attached Pages at 14.)

Under *Strickland*, petitioner must establish both that "his attorneys acted objectively unreasonably in failing to object and that he was prejudiced by the failure." *Vuong v. Scott*, 62 F.3d 673, 684 (5th Cir. 1995) (citing *Strickland*, 466 U.S. at 687). Because the trial court properly found the extraneous offenses admissible under state law, counsel rendered no deficient performance in her attempts to keep such offenses out of trial. Attorneys do not render deficient representation by

24

failing to assert or continue to pursue objections that have no merit. This claim of ineffective assistance entitles petitioner to no habeas relief.

### 3. Failure to Object to Entrapment Question

Petitioner next contends that his attorney failed to object to an entrapment question by the prosecutor. (Attached Pages at 14.) He contends that the prosecutor sought to entrap him when she asked him whether he bought gifts for his granddaughter. (*Id.*)

The Court finds no basis for an objection to the alleged entrapment question. Therefore, counsel was not deficient in failing to assert an objection to the question. Attorneys do not render deficient performance when they fail to assert a meritless objection. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997). Furthermore, to the extent the question was objectionable, petitioner has shown no prejudice from the failure to assert an objection to it. He has not shown a reasonable probability that the outcome of his trial would have differed had counsel lodged an objection to the question. This claim entitles petitioner to no habeas relief.

### 4. Failure to Submit Petitioner for Psychological Testing Before Trial

Petitioner also contends that his attorney rendered ineffective assistance by failing to send him for psychological testing prior to trial. (Attached Pages at 14.) He suggests that such testing would have revealed his psychological state of mind. (*Id.*)

The Court finds no deficiency of counsel with respect to the failure to send petitioner for psychological testing. Petitioner, furthermore, has not shown how such testing would have created a reasonable probability of a different outcome at trial. This claim entitles petitioner to no habeas relief.

### 5. Failure to Call Witnesses

Petitioner contends that his attorney failed to call two witnesses that were subpoenaed for trial. (Attached Pages at 14.) He contends that an uncalled granddaughter[17] would have testified

---

[17] At the time of trial two granddaughters, ages six and three, lived at their grandparent's home. RR-III at 208. The granddaughter that petitioner contends would have testified for him was the six-year-old. *See* RR-IV at 146.

that he "never molested her" when he took her to school every morning or when he would take her out to eat alone.  (*See* Aff. of Facts at 5.)  He provides no other specific details regarding this claim. (*See id.*; Attached Pages at 14.)

In response to petitioner's state application for writ of habeas corpus, trial counsel submitted an affidavit in which she averred:

> All fact and character witnesses testified at trial, except for one.  The one witness that did not testify was a minister that the defendant claimed could vouch for his good character.  Unfortunately, the minister was unwilling to testify on behalf of my client.  I also made the independent decision that the minister's testimony would be harmful to my client.

S.H. Tr. at  49.

Based upon this credible explanation for the failure to call the minister, the Court finds no deficiency of counsel related to such failure.  Petitioner has not shown clear and convincing evidence to overcome the presumption of correctness that the statements of counsel are credible and worthy of belief.  Counsel had legitimate reasons for not calling the minister to testify at trial.  The failure to call such witness entitles petitioner to no habeas relief.

The failure to call the six-year-old granddaughter to testify at trial also entitles petitioner to no habeas relief.  "Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative.  Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) (citations omitted).  The Court finds this claim conclusory in that petitioner has provided nothing beyond his own assertions to prove that his granddaughter would have testified as he asserts.  Unless a petitioner provides the court "with affidavits (or similar matter)" from the alleged favorable witness "suggesting what [she] would have testified to," claims of ineffective assistance of counsel fail for lack of prejudice. *Id.* at 636.  The petitioner's "conclusory speculation about the effect" of the alleged favorable testimony "falls far short" of demonstrating prejudice. *Id.*  In this instance, furthermore, there are obvious obstacles to calling such a young witness.  Moreover, even assuming that the grand-

26

daughter would provide the testimony that petitioner indicates she would, such testimony would not create a reasonable probability of a different outcome at trial. The Court finds no deficiency in not calling the six-year-old. That counsel failed to do so entitles petitioner to no habeas relief.

### 6. *Failure to Advise Petitioner of Right to Remain Silent*

Petitioner lastly contends that his attorney failed to advise him of his right to remain silent. (Attached Pages at 14.) He suggests that he testified only because of such failure. (*Id.*)

Petitioner raised this specific claim in a supplement to his state application for writ of habeas corpus. S.H. Tr. at 42. The trial court obtained an affidavit from counsel wherein the attorney averred that she advised petitioner of "all of his rights prior to trial, including his right to remain silent." *Id.* at 56. As mentioned before, the trial court found the attorney "trustworthy" and the statements in her affidavit "worthy of belief." *Id.* at 39, 42. Because petitioner has not shown clear and convincing evidence to overcome the presumption of correctness of that credibility finding, *see* 28 U.S.C. § 2254(e)(1) (setting forth clear and convincing standard), this Court defers to that credibility finding. Consequently, the Court finds no deficiency of counsel related to advising petitioner of his right to remain silent. This claim entitles petitioner to no habeas relief.

### B. Ineffective Assistance of Appellate Counsel

In his first claim, petitioner complains that he received ineffective assistance from his appellate attorney. (*See* Pet. at 7; Attached Pages at 10.) He specifically alleges that appellate counsel failed to raise the issues of insufficient evidence, prosecutorial misconduct, and ineffective assistance of trial counsel. (*See* Pet. at 7; Attached Pages at 10.)

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly

controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted). To determine whether appellate counsel was deficient, the Court thus must consider whether the omitted challenge "would have been sufficiently meritorious such that [the attorney] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

In this instance, petitioner raised his claims of ineffective assistance of appellate counsel in his state writ. *See* S.H. Tr. at 8. The trial court found no ineffective assistance of appellate counsel. *Id.* at 39-46.

Because this Court has determined that the claims raised in this petition lack merit, appellate counsel did not render ineffective assistance by not presenting to the court of appeals the issues of insufficient evidence, prosecutorial misconduct, and ineffective assistance of trial counsel. Appellate counsel is not deficient in failing to present a meritless claim on direct appeal. Furthermore, to show prejudice from a failure to adequately brief an issue for appeal, petitioner must show a reasonable probability that the appeal would have had a different outcome had appellate counsel adequately addressed the issues. Petitioner has made no such showing of prejudice. The claim that his appellate attorney failed to raise claims on appeal thus provides no basis for federal habeas relief.

Further, by denying petitioner's state writ on the findings of the trial court, the Texas Court of Criminal Appeals adjudicated this claim on the merits. The decision of the state court does not appear inconsistent with applicable Supreme Court precedent. The decision does not appear to have involved any unreasonable application of Supreme Court precedent. The adjudication of the claim did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on this claim.

## VII. EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

28

## VIII.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED this 25th day of July, 2005.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

29